FILED
CLERK

2:40 pm, Dec 03, 2018

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
HUGO MARTINEZ,

      Plaintiff,

      v.

PAO'S CLEANING, INC., and
PAULA A. VELASQUEZ,

      Defendants.
-------------------------------------------------------------------x

Case No.: 16-cv-6939 (SJF)(AKT)
**ORDER ADOPTING REPORT & RECOMMENDATION**

FEUERSTEIN, Senior District Judge:

I.    Introduction

      Plaintiff Martinez ( "Plaintiff") commenced this action against Defendants Pao's Cleaning, Inc. (hereafter, the "Company") and Paula A. Velasquez (hereafter, "Velasquez"; together with the Company, the "Defendants") claiming violations of and retaliation under both the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and New York Labor Law ("NYLL"), N.Y. Lab. Law § 190, *et seq.*, as well as asserting a common law claim of conversion and an alternative claim for unjust enrichment and *quantum meruit*.  (*See* Complaint, ECF No. 1.)  The Defendants denied Plaintiff's allegations, raising multiple affirmative defenses (see Answer (ECF No. 7).[1]  Thereafter, they moved for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure, asserting a lack of federal subject matter jurisdiction

---

[1] Defendants initially raised seventeen affirmative defenses (hereafter, in the singular, "AD") (*see* Answer at 10-12), but subsequently withdrew nine of them.  (*See* ECF No. 13 (withdrawing 1st AD (failure to state a claim), 3rd AD (action barred by laches), 4th AD (action barred by unclean hands), 5th AD ((Plaintiff exempt from overtime requirements), 11th AD (action barred by payment), 13th AD (reserving right to raise further defenses), and 14th AD (action barred by accord and satisfaction)), and ECF No 14 (withdrawing 6th AD (Plaintiff not Defendants' employee), and 10th AD (failure to state claim upon which liquidated damages or attorney's fees may be awarded)).)

1

(hereafter, the "Summary Judgment Motion") (*see* ECF No. 24; *see also* ECF 26 (Support Memo)), which the Plaintiff opposes (hereafter, "Opposition" or "Opp'n") (*see* ECF No. 29). The Summary Judgment Motion were referred to Magistrate Judge A. Kathleen Tomlinson for a Report and Recommendation (*see* Minute Entry dated July 19, 2018 (ECF No. 44); July 20, 2018 Electronic Order Referring Motion).

Now before the Court is the Magistrate Judge's September 12, 2018 oral Report and Recommendation (hereafter, "Report") recommending that the Summary Judgment Motion be denied. (*See* Report (ECF No. 49-1 (Sept. 12, 2018 Tr.[2])).) The Defendants have filed an objection to the Report (hereafter, "Objection") (*see* ECF No. 49), to which the Plaintiff has responded (hereafter, "Response") (*see* ECF No. 50). For the reasons that follow, the Court overrules the Defendants' objections and adopts Magistrate Judge Tomlinson's Report in its entirety.

II. <u>Background</u>

At the beginning of her Report, Magistrate Judge Tomlinson addressed the factual background (*see* R&R Tr. at 19:19-21:19) and the procedural history underlying this action (*see id.* at 21:20-24:3), which are incorporated herein by reference and with which the Court assumes the Parties' familiarity. However, for the reader's convenience, the Court summarizes as follows.

The Plaintiff's claims against the Defendants are premised upon his having been a driver for the Company, a cleaning service entity, picking up other employees, driving them to cleaning jobs, and bringing them home at the end of their shifts, and are limited to 2015 and 2016. (*See*

---

[2] Citations to the transcript of Magistrate Judge Tomlinson's oral Report shall be "R&R Tr. at [page:line(s)]".

Report at 24:18-22.)  The Defendants maintain: that they do not have annual gross sales exceeding $500,000.00 as they performed only 5,634 cleaning jobs in 2015 and 4,928 in 2016, with the cost of those jobs averaging between $60 and $70;[3] that Plaintiff's FLSA claims, which form the basis for federal question jurisdiction, must be dismissed; and that this Court should decline to exercise supplemental jurisdiction over his state law claims.  Moving for summary judgment, they contend that the evidence is insufficient to show that the FLSA in-excess-of-$500,000-threshold is met.  (R&R Tr. at 30:10-12 (citing Support Memo at 5, 6-7); *see also id.* 30:14-17 (Defendants rely upon their calculations in their Rule 56.1 Statement to show the Company's total income is less than $500,000/year).)  Specifically, the Defendants claim that the annual number of cleaning jobs performed at the rates charged do not approach this total.  Plaintiff maintains otherwise, arguing "Defendants [*sic*] entire argument regarding their annual earnings is based upon the self-serving affidavit of Defendant Velasquez." (*Id.* at 31:9-11 (quoting Opp'n at 8).)

      Following the close of discovery and the filing of Defendants' Summary Judgment Motion, this Court directed Plaintiff's and Defendants' counsel to meet and confer regarding the number of cleaning jobs performed in 2015 and 2016.  To do so, they were to review the Company's daily appointment calendars and, using Velasquez's self-identified notations (*i.e.*, circles connoting completed jobs and dashes connoting cancelled jobs (*see* Pl's July 13, 2018 Status Report at 2 (ECF No. 41); *see also* Ex. 1, attached to Pl.'s Rule 56.1 Counterstatement (Velasquez Depo. Tr. at 135: 9-13)), identify those jobs they agreed had or had not been

---

[3] Using Defendants' job totals and their higher cost per job figure, annual gross sales calculations are:
For 2015:  5,634 total jobs * $70 average cost = $394,380.00 annual gross sales; and
For 2016:  4,928 total jobs * $70 average cost = $344,960.00 annual gross sales.

3

completed and those to which they did not agree. The success of that meet and confer was questionable, as "for the first time in this litigation," defense counsel identified a third notation method, *i.e.*, "that some of the appointments were marked with a 'swirl', not a circle . . . and that these 'swirls' did not constitute a completed appointment and were therefore akin to a dash" (Pl's July 13, 2018 Status Report (ECF No. 41) at (unnumbered) 2), and counsel reviewed only one month's calendar entries, *i.e.*, January 2015. (*Cf.*, *id.* (reporting only January 2015 scheduled cleaning jobs were reviewed), *with* Defs.' July 13, 2018 Status Report (ECF No. 42).) However, Plaintiff's counsel subsequently filed a supplemental status report informing the Court that he realized that the original alleged total number of cleaning jobs for 2015 and 2016 was overstated and he was, therefore, amending the totals alleged to 7,591 total cleaning jobs for 2015 versus the originally alleged 8,884 jobs, and 7,607 total cleaning jobs for 2016 versus the originally alleged 9,014 jobs. (*See* Pl.'s July 18, 2018 Supp. Status Report (ECF No. 43).) The Plaintiff's Supplemental Status Report included colored copies of the Company's daily calendars[4] and photographs of three envelopes used by Plaintiff to collect cleaning job fees and upon each was written several job names and corresponding amounts collected (ranging from $60.00 to $85.00).[5] (*See* Exs. 1(A) (ECF No. 43-1), 1(B) (ECF No. 43-2), 2(A) (ECF No. 43-3), 2(B) (ECF No. 43-4), and 5 (ECF No. 43-7), *attached to* Pl.'s July 18, 2018 Supp. Status Report.)

---

[4] A black-and-white version of the daily dairies was submitted to Chambers, but not filed, as Exhibit A to the Velasquez's Declaration in support of the Summary Judgment Motion. (*See* ECF No. 28.)

[5] Photographs of three other envelopes had previously been submitted in opposition to the Summary Judgment Motion. (*See* Ex. 8, attached to Eden Aff. Supp. Pl.'s Opp'n (ECF No. 31).) The Court notes that the electronically filed versions of the photographs are unclear, but are clear in the hard, courtesy copies provided to Chambers.

When it became apparent at a July 19, 2018 status conference that the parties were unable to resolve their dispute, this Court referred the Defendants' Summary Judgment Motion to Magistrate Judge Tomlinson. Upon referral, the Magistrate Judge directed counsel to provide her "with a single set of courtesy copies – in color – of all supplemental filings related to Defendants' motion for summary judgment. The Court specifically directs counsels' attention to DE 36 – DE 43," *i.e.*, the parties' status reports (hereafter, collectively, the "Supplemental Submissions"). (Aug. 8, 2018 Electronic SCHEDULING ORDER (AKT).) Without objection, the parties complied therewith. (*See* Case Docket, *in universum*.)

III.     Applicable Standards

*A. Report and Recommendation Standard of Review*

Rule 72 of the Federal Rules of Civil Procedure permits a magistrate judge to conduct proceedings of dispositive pretrial matters without the consent of the parties. *See* Fed. R. Civ. P. 72(b). Any portion of a report and recommendation on dispositive matters to which a timely objection has been made is reviewed *de novo*. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). However, "when a party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report strictly for clear error." *Frankel v. City of N.Y.*, Nos. 06-cv-5450, 07-cv-3436, 2009 WL 465645, at *2 (S.D.N.Y. Feb. 25, 2009); *see also Butto v. Collecto, Inc.*, 290 F.R.D. 372, 379 (E.D.N.Y. 2013) ("In a case where a party makes only conclusory or general objections, or simply reiterates his original arguments, the Court reviews the Report and Recommendation only for clear error." (quotations and citation omitted)). The Court is not required to review the factual findings or legal conclusions of the magistrate judge as to which no proper objections are made. *See Thomas v. Arn*, 474 U.S. 140, 150, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985). Whether or not proper objections have been filed, the district

judge may, after review, accept, reject, or modify any of the magistrate judge's findings or recommendations. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

    *B. Motion for Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 164-65 (2d Cir. 2013); *Viola v. Philips Med. SYS. of N. Am.*, 42 F.3d 712, 716 (2d Cir. 1994) (holding summary judgment appropriate only where admissible evidence in the form of affidavits, deposition transcripts, or other documentation demonstrates the absence of a genuine issue of material fact, and one party's entitlement to judgment as a matter of law). No genuinely triable factual issue exists when the moving party demonstrates, on the basis of the pleadings and submitted evidence, and after drawing all inferences and resolving all ambiguities in favor of the nonmovant, that no rational jury could find in the nonmovant's favor. *See Chertkova v. Conn. Gen'l Life Ins., Co.*, 92 F.3d 81, 86 (2d Cir. 1996). Although the evidence is viewed in favor of the non-moving party, *see Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015), "the mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which the [fact-finder] could reasonably find for the [non-movanat]." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 554 (2d Cir. 2005)(internal alterations and quotation marks omitted). It is insufficient to "rely on conclusory allegations or unsubstantiated speculation" to defeat a summary judgment motion. *Id.* (Internal quotation marks omitted). Instead, when the moving party has documented particular facts in the record, "the opposing party 'must set forth specific facts showing that there is a genuine issue for trial,'" *Williams v. Smith*, 781 F.2d 319, 323 (2d

6

Cir. 1986)(quoting Fed. R. Civ. P. 56(e)), which requires going beyond the allegations of the pleadings. *See Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citation omitted). "[A]ll doubts as to the existence of a genuine issue for trial should be resolved again the moving party." *Brady v. Town of Colchester*, 863 F.2d 205, 210 (2d Cir. 1988)(citing *Celotex*, 477 U.S. at 330 n.2). Furthermore, as a general rule, "district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage," as the "[a]ssessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of N.Y.*, 426 F.3d 549, 551, 553-54 (2d Cir. 2005); *see also Rule v. Brine, Inc.*, 85 F.3d 1002, 1011 (2d Cir. 1996) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

    C. The FLSA

> The FLSA's federal minimum-wage and overtime guarantees extend only to those employees who "in any workweek [are] engaged in commerce or in the production of goods for commerce, or [are] employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. §§ 206, 207. A non-exempt employee may qualify through either "individual coverage," when the employee is directly engaged in interstate commerce through his or her work, or "enterprise coverage," when the employer is an "enterprise engaged in commerce or in the production of goods for commerce," as defined by the Act. *See, e.g., Jacobs v. N.Y. Founding Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009); *Padilla v. Manlapaz*, 643 F. Supp.2d 298, 299 (E.D.N.Y. 2009).
> Section 203(s)(1) of the FLSA defines an "enterprise engaged in commerce or in the production of goods for commerce" to mean, *inter alia*, an enterprise (1) that "has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and (2) that has "annual gross volume of sales made or business done [] not less than $500,000 (exclusive of excise taxes

7

> . . . .)." 29 U.S.C. § 203(s)(1)(A); *Boekemeir v. Fourth Universalist Soc'y in City of N.Y.*, 86 F. Supp.2d 280, 285 (S.D.N.Y. 2000).

*De Xiong Pan v. Wei Plumbing, Inc.*, No. 12-cv-1781, 2013 WL 6053496, at *6 (S.D.N.Y. Nov. 13, 2013)(internal footnote omitted; brackets in *De Xiong Pan*).

IV.  Discussion

   *A.  Magistrate Judge Tomlinson's Report & Recommendation*

Following oral arguments from counsel on the Summary Judgment Motion (*see* R&R Tr. at 2:20-19:8), and providing a detailed recitation of the procedural history of the case and the Plaintiff's and the Defendants' statements of the facts, and discussing the applicable summary judgement and FLSA standards, the Magistrate Judge began her recommendation by recognizing that the Defendants conceded they are an enterprise engaged in commerce, thereby establishing the first prong of the FLSA enterprise liability test. (*See id.* at 38:18-39:4.) However, she then stated "there are two substantive disputes of material fact that preclude[]summary judgment in this case. First of all, the average price charged for cleanings performed by [the Company], and two, the number of cleanings in the relevant years performed." (*Id.* at 39:6-10.)

As to the job cost issue, Magistrate Judge Tomlinson found it to be disputed based upon the inconsistencies between Velasquez's deposition testimony and her affidavit submitted in support of the Summary Judgment Motion, which was the Defendants' "primary piece of evidentiary support for their assertions that they charge[d] between $60 and $70 per cleaning in 2015 and 2016" (*id.* at 39:20-40:4), which were "not supported by any documentary evidence." (*Id.* at 40:6.) Magistrate Judge Tomlinson stated, "Defendants' reliance exclusively on Ms. Velasquez' declaration is problematic since courts in this [C]icuit have held that self-serving assertions of fact from FLSA [d]efendants are insufficient to warrant summary judgment on the

issue of gross annual revenues under the FLSA." (*id.* at 40:7-14 (citing *De Xiong Pan*, 2013 WL 6053496, at *6, and *Gonzalez v. El Acajutla Rest. Inc.*, No. 04-cv-1513, 2007 WL 869583, at *7 (E.D.N.Y. Mar. 20, 2007)).) This, coupled with the evidence produced by the Plaintiff "that seems to support the fact that some of the cleanings were priced higher" than Velasquez's claimed $60 to $70, *i.e.*, the envelopes showing multiple cleaning jobs at rates of $80 and higher, led to the Magistrate Judge's conclusion that what was charged for the completed 2015 and 2016 cleaning jobs is a triable issue of fact. (*See* 40:15-20 (citing Ex. 8, attached to Eden Aff.).)

As to the number of completed jobs issue and, in essence, viewing the appointment calendars as akin to contracts, and since the parties were "unable to agree as to what Defendants' appointment [calendars] actually show" (*id.* at 40:24-25; *see also id.* at 41:1-15), and "'where contractual language is ambiguous and subject to varying reasonable interpretations, intent becomes an issue of fact and summary judgment is inappropriate'" (*id.* at 41:8-10 (quoting *Palmieri v. Allstate Ins. Co.*, 445 F.3d 179, 187 (2d Cir. 2006)), "the spirit of Federal Rule of Civil Procedure 56 is best served by applying this logic to the instant circumstance" (*id.* at 41:11-13), Magistrate Judge Tomlinson concluded that "the 'intent' of the recordkeeper [*i.e.*, Velasquez] in making her notations next [to] individual entries, whether a circle, a dash or a swirl is, given the ambiguity of many of the notations, an issue of fact for the jury," and recommended summary judgment to be inappropriate. (*Id.* at 41: 18-22.)

The Magistrate Judge also noted that with their Supplemental Submissions, *i.e.*, ECF Nos. 41-43, the parties "mudd[ied] the summary judgment record, and through them . . . have effectively 'thwarted the purpose of the rules, which is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties.'" (*Id.* at 42:6-14 (quoting *Hengjin Sun v. China 1221,*

9

*Inc.*, No. 12-cv-7135, 2015 WL 5542919, at *3 (S.D.N.Y. Aug. 12, 2015)(further citation omitted)).) She further highlighted a declaration by Defendants' counsel, which she found "truly is the very definition of disputed facts," *to wit*: "'Therefore, this Court should credit Defendants' calculations, which result in annual earnings far below the statutory minimum for this Court's jurisdiction ($500,000) and reject Plaintiff's completely flawed numbers.'" (*Id.* at 42:17-22 (quoting Weiss Reply Decl. (ECF No. 32) at ¶10).) These additional "procedural irregularities" were additional reasons for Magistrate Judge Tomlinson recommending that the Defendants' Summary Judgment Motion be denied. (*See id.* at 41:23-24, 42:22-43:2.)

  *B. The Defendants' Objection*

  First, the Defendants contend that "Magistrate [Judge] Tomlinson's recommendation that summary judgment should be denied should be set aside because there is no issue of fact surrounding the number of cleanings." (Opp'n at 4.) More specifically, they assert:

> [the] Report is erroneous because it credits Plaintiff's cleaning count, which has already been shown to be inherently unreliable by Plaintiff himself and is essentially a "sham issue of fact" created when Plaintiff "recounted" and contradicted his own count. It is further submitted that under the above standard, one cannot "reasonably" infer that Plaintiff's new sworn count is any more reliable than his initial sworn count because the initial count was already admittedly false. Conversely, Defendants' count is inherently reliable and reasonable under the circumstances because it was performed by the person who created the logs in the first place.

(*Id.*)

  Second, the Defendants argue that Magistrate Judge Tomlinson erred in her denial recommendation to the extent is was based upon finding the average cost of the cleaning jobs to be in dispute. (*See id.* at 5.) They posit that it is not reasonable to infer that the average cleaning job could be greater than $80 based upon Plaintiff's evidence of three envelopes, "'which seems

10

to support the fact that some of the cleanings were priced higher than [$80],'" (*id.* (quoting R&R Tr. at 40:16-17)), when she testified otherwise at her deposition. (*See id.*) They believe the Magistrate Judge's rationale to be "flawed" based on their contention that no material issue of fact exists. (*See id.*)

    *C. The Plaintiff's Response*

Not surprisingly, the Plaintiff responds that Magistrate Judge Tomlinson's recommendation that the Defendants' Summary Judgment Motion be denied was proper "because there is a legitimate dispute over Defendants' annual revenue." (Response at 7.) In particular, they claim the rationale for the Magistrate Judge's recommendation was the "exist[ence of] evidence proving that Defendants' claims are, at best, uncertain, and at worst, demonstrably false." (*Id.* at 3 ("The reason for the dispute[] is not mere disagreement, but because Defendants' assertions are contradicted by tangible documentary evidence.").) Such evidence, in controversion of Velasquez's "self-serving affidavit created in support of [the Defendants'] Motion" and her "stained" credibility" (*id.* at 7), present "a triable issue of fact as to whether the [Company] is an enterprise whose annual gross volume of sales made, or business done is not less than $500,000" (*id.* at 3), which "must proceed to trial so that a finder of fact may determine the Defendants' actual revenues." (*Id.* at 7.)

More particularly as to the number of cleaning jobs performed, relying upon the same appointment calendars utilized by the Defendants in compiling their aggregate numbers for 2015 and 2016, the Plaintiff calculated greater job totals for those years. (*See id.* at 3-4; *see also id.* at 4 n.1 (noting Plaintiff's error in his original, higher calculation of job totals).) He attributes this to "[t]he inherent ambiguity surrounding the records," highlighting the Defendants' initial claim that Velasquez used circle and dash notations for identifying completed and incomplete jobs, but

11

then subsequently claimed swirl notations were also used to identify incomplete jobs, which is "emblematic of Defendants' flawed recordkeeping system" and explains the "inability of the parties to determine the number of appointments" which were completed and which were not. (*Id.*) Rather, because Velasquez's notations are purely subjective, "[t]he intent [of] their author is ripe for determination by a jury." (*Id.* at 5.)

As to the average cost per job, Plaintiff maintains that "[b]ased upon the evidence provided by *both* parties, it is only logical to conclude that there is an issue of fact" in dispute. (*See id.* (emphasis added).) In support thereof, he draws the Court's attention to: Velasquez's Declaration, claiming the average cleaning cost was between $60 and $70 (*id.* (citing Velasquez Decl. ¶8)); Defendants' Objection wherein they claim "Velasquez testified Defendants charged between $60 and $80 per cleaning" (*id.* (citing Objection at 5); Velasquez's deposition testimony wherein she "testified that the average cost of a cleaning is between $60 and $65," but also testified that some jobs were billed for as little as $40 and others for as much as $120 (*id.* at 6 (citing Velasquez Depo. Tr. at 100:19-22; 97:23-98:4, respectively)); and the photographs of three envelopes Plaintiff used to collect job fees which range from $60 to $85 per job (*see id.* (citing ECF No. 43-7).) In sum, Plaintiff argues that, on the record before the Court, it is impossible to conclusively establish the average cost of cleaning, especially considering that the Defendants were the sole custodians of the documentary evidence which would establish the average cost per cleaning, *i.e.*, the envelopes, but failed to introduce that evidence and, instead, relied "upon the self-serving declaration and testimony of . . . Velasquez, which themselves, are inconsistent." (*Id.*)

### D. The Court's Consideration of Defendants' Objections

As an initial matter, the Defendants did not object to Magistrate Judge Tomlinson's consideration of the Supplemental Submissions, which formed an additional basis for her recommending the denial of the Summary Judgment Motion. Therefore, they are deemed to have waived any objections to the Magistrate Judge's reliance on those materials. Since the Court is not required to review the factual findings or legal conclusions of a magistrate judge as to which no proper objections are made, *see Arn*, 474 U.S. at 150, and finding no clear error in Magistrate Judge Tomlinson's reliance on the Supplemental Submissions, that portion of the Report is adopted in its entirety. *See also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, *but may consider other materials in the record*." (emphasis added)).

Magistrate Judge Tomlinson's denial recommendation is focused on the second prong of the FLSA enterprise liability test, *i.e.*, whether the Defendants' annual gross volume of sales exceed $500,000. In this case, that requires examining two factors: the total number of cleaning jobs completed in the relevant years, 2015 and 2016, and the average cost of those jobs. However, final determination of those factors remains disputed. As the Magistrate Judge correctly stated, Defendants' own declaration that "this Court *should credit Defendants' calculations* which result in annual earnings far below the statutory minimum for this Court's jurisdiction ($500,000) and reject Plaintiff's completely flawed numbers" "is the very definition of disputed facts." (R&R Tr. at 42:17-22 (citing Weiss Reply Decl. ¶10; emphasis added).) The Defendants' request that the Court "credit" their calculations is an overt invitation for it to weigh the evidence and, thus, determine credibility. *But see Jeffreys*, 426 F.3d at 551, 553-54 ("district courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage," as the "[a]ssessments of credibility and choices between conflicting versions of the events

are matters for the jury, not for the court on summary judgment"); *Rule*, 85 F.3d at 1011 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.").

To the extent the Defendants advance a "sham issue of fact" argument (*see* Objection at 4), the Court is unpersuaded. "The 'sham issue of fact' doctrine 'prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn statement.'" *Hengjin Sun*, 2015 WL 5542919, at *4 (quoting *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013)). Here, the Defendants argue that the Magistrate Judge's Report is "erroneous because it credits Plaintiff's cleaning count, which has already been shown to be inherently unreliable by Plaintiff himself and is essentially a 'sham issue of fact' created when Plaintiff 'recounted' and contradicted his own initial count." (Objection at 4.) Defendants would fault Plaintiff, in part, because they (the Defendants) changed their representation about the meaning of Velasquez's notations, from her testimony that she used circle notations to indicate completed jobs and dashes to indicate uncompleted ones (*see* Pl.'s Rule 56.1 Statement ¶¶7, 11) to their later claiming Velasquez also used a swirl notation to indicate jobs which were not completed. (*See* Pl.'s July 13, 2018 Status Report at (unnumbered) 2.) That new information prompted Plaintiff's counsel to retally his 2015 and 2016 job completion numbers and to subsequently amend Plaintiff's alleged totals. (*See* Plaintiff's July 18, 2018 Status Report (ECF No. 43).) The Defendants argue Plaintiff's amended numbers are tantamount to an admission that his originally alleged job total numbers are false, implying a willful misrepresentation, not an unwitting mistake, exacerbated by the incomplete information provided by Defendants. They then baldly assert that their numbers are "inherently reliable and reasonable under the

14

circumstances because [the count] was performed by the person who created the [diary entries] in the first place."[6] (Objection at 4.)

Magistrate Judge Tomlinson did not credit Plaintiff's job count totals. Rather, on the record presented, which includes the Supplemental Submissions, the consideration of which the parties did not object, she found there is a disputed issue of fact as to what are the total numbers. In addition, how the jobs are to be categorized as completed or not was complicated by the Defendants changing the determining criteria from circles and dashes, to circles, dashes or swirls; Plaintiff should not be placed at a detriment for this subsequent development. *See, generally, De Xiong Pan*, 2013 WL 6053496, at *13 ("parties should not be permitted to evade liability for their conduct solely because of an absence of evidence for which they themselves are to blame")(collecting cases). Finally, as the Company's sole recordkeeper, Velasquez's statement that her counts are inherently reliable is self-serving, *see, e.g.*, *Gonzalez*, 2007 WL 869583, at *7 (self-serving statement of defendant insufficient to warrant summary judgment on issue of gross annual revenues under FLSA), and must be tested for its credibility, which testing is reserved for a jury and is not for a court to decide on a motion for summary judgment. *See Rule*, 85 F.3d at 1011.

Rather, viewing all the evidence in the light most favorable to Plaintiff, the non-movant, and resolving all ambiguities and drawing all permissible factual inferences in his favor, *see De Xiong Pan*, 2013 WL 6053496, at *5 (further citations omitted), granting summary judgment is inappropriate in this instance. The ambiguities of Velasquez's notations in recording job

---

[6] Ironically, regarding the cost per job issue, Velasquez's Declaration in support of the Summary Judgment Motion contradicts her deposition testimony which: (1) is a basis to disregard that portion of her Declaration (*cf.*, Velasquez Decl. at 100:1-22, *with* Velasquez Decl ¶8), and (2) such contradiction casts doubt on Defendants' proclamation of inherent reliability in Velasquez's recordkeeping.

15

completions, as highlighted by counsel's failed July 2018 meet-and-confer, demonstrates a material disputed fact. Concomitant therewith is that Velasquez was the Company's sole recordkeeper in this FLSA case, warranting the testing of the veracity of her recordkeeping to avoid the shortcomings of any self-serving claims, which is the bailiwick of the jury. Moreover, considering the contradicting evidence the Defendants submitted on the cost per job factor in concert with Plaintiff's rebuttal evidence of higher averages, the cost per job remains a disputed fact, precluding the granting of summary judgment.

* * *

Having considered the Defendants' objections to the Report and conducted a *de novo* review of the record, the Defendants' objections are overruled, and Magistrate Judge Tomlinson's Report is adopted in its entirely.

[Remained of page intentionally left blank.]

V.  Conclusion

Accordingly, IT IS HEREBY ORDERED that the Defendants' Summary Judgment Motion is denied.

IT IS FURTHER ORDERED that the December 19, 2018 Status Conference scheduled for 11:15 a.m. in Courtroom 1010 of the Central Islip Federal Courthouse is converted to a Pretrial Conference.

In accordance with Rule 73(b)(2) of the Federal Rules of Civil Procedure, the parties are reminded that they may consent to the Magistrate Judge conducting all further proceedings in this action, including conducting a trial. (*See* ECF No. 3 (consent form).) However, the parties are free to withhold consent without adverse substantive consequences. *See* Fed. R. Civ. P. 73(b)(2).

Dated this 3rd day of December 2018 at Central Islip, New York.

/s/ *Sandra J. Feuerstein*
Sandra J. Feuerstein
United States District Judge